UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOBSON WAREHOUSE COMPANY, INC. d/b/a XPO LOGISTICS SUPPLY CHAIN,<br><br>Plaintiff,<br><br>v.<br><br>LINDT & SPRUNGLI (NORTH AMERICA) INC.,<br><br>Defendant, | No. 2:19-cv-01889-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendant Lindt & Sprungli (North America) Inc.'s ("Defendant") Motion to Compel Arbitration and Dismiss. (ECF No. 18.) Plaintiff Jacobson Warehouse Company, Inc. d/b/a XPO Logistics Supply Chain ("Plaintiff") filed an opposition. (ECF No. 28.) Defendant filed a reply. (ECF No. 35.) For the reasons set forth below, the Court GRANTS Defendant's motion. The Court also DENIES Plaintiff's Application for Right to Attach Order and Motion for Issuance of Writ of Attachment as moot. (ECF No. 14.)

///

///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute between the parties concerning the operation of a warehouse in Tracy, California in which Plaintiff alleges Defendant failed to compensate Plaintiff for services rendered in 2018 and 2019.  (ECF No. 13.)  Before the breakdown in the parties' business relationship, they and their predecessors and subsidiaries had worked together for nearly twelve years.  (ECF No. 32 at 7; ECF No. 28 at 9.)  During that period, the parties operated pursuant to a document titled "Services Agreement" signed by Plaintiff's predecessor and Defendant's subsidiary in November 2007, later amended to include Plaintiff and Defendant, and a letter of intent ("LOI"), later amended.  (*See generally* ECF No. 32 at 7–10.)  The arbitration provision in the Services Agreement requires the parties submit "any disagreement concerning the existence, interpretation or application" of the Services Agreement to JAMS in San Francisco for binding arbitration.  (*Id.* at 9.)[1]

Despite this broad arbitration provision, Plaintiff filed a lawsuit in this Court on September 18, 2019, alleging breach of contract and open book account claims against Defendant.  (ECF No. 1.)  Shortly thereafter, Plaintiff amended its complaint, removing any mention of a prior written agreement between the parties and dropping its breach of contract claim.  (ECF No. 13.)  Defendant filed the instant motion to compel arbitration on October 24, 2019.  (ECF No. 18.)[2]

### II.    STANDARD OF LAW

The parties agree the Federal Arbitration Act ("FAA") applies.  (*See* ECF Nos. 32, 28, 35); 9 U.S.C. §§ 1–14.  Generally, in deciding whether a dispute is subject to an arbitration agreement covered by the FAA, the Court must determine: "(1) whether a valid agreement to arbitrate exists[;] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "To evaluate

---

[1] The Services Agreement defines JAMS as "the Judicial Arbitration and Mediation Service, Inc., a provider of alternative dispute resolution services."  (ECF No. 26 at 4.)

[2] Subsequent citations in this Order will be to the unredacted version of Defendant's motion filed December 9, 2019.  (ECF No. 32.)

2

1  the validity of an arbitration agreement, federal courts should apply ordinary state-law principles
2  that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170
3  (9th Cir. 2003) (internal quotation marks and citation omitted).  The party seeking to compel
4  arbitration has the burden of proving the existence of an agreement to arbitrate by a
5  preponderance of the evidence.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir.
6  2014).  Such a showing may be made by extrinsic evidence to the complaint.  *See Sanford v.
7  MemberWorks, Inc.*, 483 F.3d 956, 963 n.9 (9th Cir. 2007).

8  With respect to the first consideration under the FAA, district courts in the Ninth Circuit
9  have reviewed conflicting evidence as to whether a valid agreement to arbitrate exists under the
10 Federal Rule of Civil Procedure 56 standard applicable to motions for summary judgment.  *See,
11 e.g.*, *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011); *Gonzalez
12 v. Citigroup, Inc.*, No. CIV. S-11-0795 LKK/GGH, 2011 WL 5884250, at *2 (E.D. Cal. 2011);
13 *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).  Although the Ninth
14 Circuit has not expressly adopted the standard, it has suggested such a standard applies.  *See
15 Sanford*, 483 F.3d at 963 n.9; *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925
16 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
17 636 F.2d 51, 54 (3d Cir. 1980)); *but cf. Hamilton v. Shearson-Lehman Am. Exp., Inc.*, 813 F.2d
18 1532, 1535 (9th Cir. 1987) (holding a motion to compel arbitration is not the equivalent of a
19 motion for summary judgment for the purposes of disallowing a plaintiff to voluntarily dismiss
20 her action).  As the parties provide no alternative evidentiary standard, the Court will determine
21 whether there is a genuine dispute as to the existence of a valid arbitration provision.

22 Under summary judgment practice, the Court examines the parties' evidence to determine
23 whether the opposing party has established a genuine issue as to any material fact exists.
24 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l
25 Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  The opposing party must tender
26 evidence of specific facts in the form of affidavits, and/or admissible discovery material in
27 support of its contention a dispute exists.  Fed. R. Civ. P. 56(c).  The evidence of the opposing
28 party is to be believed and all reasonable inferences that may be drawn from the facts pleaded

3

1 before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*,
2 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the
3 opposing party's obligation to produce a factual predicate from which the inference may be
4 drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*,
5 810 F.2d 898 (9th Cir. 1987).

6      With respect to the second consideration under the FAA, the party resisting arbitration
7 bears the burden of proving the dispute does not fall within the scope of the valid arbitration
8 agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The FAA requires
9 "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."
10 *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). A motion to
11 compel arbitration should be granted unless "it may be said with positive assurance that the
12 arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*
13 *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). If a court determines that an
14 arbitration clause is enforceable and the plaintiff's claims are subject to arbitration, it has the
15 discretion to either stay the case pending arbitration or dismiss the complaint. *Luna v. Kemira*
16 *Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008).

17      **III.    ANALYSIS**

18      The parties dispute both prongs of the test. The parties primarily disagree whether the
19 arbitration provision in the Services Agreement was binding at the time of the dispute. (ECF No.
20 32 at 12–13, 15–19; ECF No. 28 at 13–23.) In addition, the parties dispute whether the
21 arbitration provision is "broad[]" and encompasses Plaintiff's claims (ECF No. 32 at 13), or
22 "narrow" such that Plaintiff's claims fall outside its scope (ECF No. 28 at 24).

23      The Court will first address Plaintiff's evidentiary objections to Defendant's evidence (*see*
24 ECF Nos. 28-2, 42), and then address the parties' core arguments regarding the existence and
25 scope of the arbitration agreement.

26          A.    <u>Evidentiary Objections</u>

27      Plaintiff objects to nearly every piece of evidence submitted by Defendant in support of its
28 motion. (ECF Nos. 28-2, 42.) The Court will address only those objections to evidence upon

which the Court relies.

> i.  Services Agreement

Plaintiff objects to the Services Agreement attached as Exhibit A to Christopher Wood's first declaration (ECF No. 26 at 1–17) on lack of foundation and best evidence rule grounds. (ECF No. 28-2 at 2.) In response, Defendant argues Mr. Wood's first declaration includes adequate foundation of personal knowledge and the best evidence rule objection is frivolous. (ECF No. 39 at 2–3.) Plaintiff fails to provide any explanation as to why Mr. Wood's testimony that the attached Services Agreement is a true and correct copy of the Services Agreement between the parties does not fall into one of the express examples provided by the Federal Rules of Evidence that satisfy the rule. *See* Fed. R. Evid. 901(b)(1) (providing testimony of a witness with knowledge "that an item is what it is claimed to be" satisfies the requirement of authenticating or identifying evidence). Similarly, Plaintiff fails to explain why the copy of the Services Agreement does not fall into the exception to the best evidence rule permitting admission of copies absent a genuine question of the original's authenticity. *See* Fed. R. Evid. 1003. Plaintiff does not attempt to raise a genuine question as to the authenticity of the Services Agreement. Therefore, the Court overrules Plaintiff's objections to the admissibility of the Services Agreement.

> ii.  Letter of Intent & Amendment

Plaintiff objects to the LOI and its amendment attached as Exhibits C and D to Mr. Wood's first declaration (ECF No. 26 at 22–31) on lack of foundation grounds. (ECF No. 28-2 at 4–5.) In response, Defendant argues Mr. Wood has personal knowledge of and can provide a foundation for the LOI and amendment because he was personally involved with them as part of his job. (ECF No. 39 at 6.) As with Plaintiff's objection to the Services Agreement on the same grounds, its objection here is meritless. Mr. Wood states he has been personally involved in all contract negotiations concerning the management of the distribution center. (ECF No. 20 ¶ 2.) Therefore, his statement that the attached LOI and amendment are what Defendant claims them to be is made by a witness with knowledge. *See* Fed. R. Evid. 901(b)(1). The Court accordingly overrules Plaintiff's objection to the admissibility of the LOI and its amendment.

               *iii.*       *First Declaration of Christopher Wood*

                       *a.*       Paragraph 5

Plaintiff objects to paragraph 5 of Mr. Wood's first declaration (ECF No. 20 ¶ 5) on lack of personal knowledge, hearsay, and legal conclusion grounds. (ECF No. 28-2 at 4–5.) In response, Defendant argues Mr. Wood has personal knowledge of the facts in paragraph 5 because he was involved with the LOI and amendment as a part of his job. (ECF No. 39 at 6.) Defendant argues Mr. Wood's personal knowledge authenticates the documents under Federal Rule of Evidence 901(b)(1). (*Id.*) Defendant asserts the hearsay objection is meritless because there is not an out of court statement. (*Id.*) Finally, Defendant argues any opinion or conclusory statements fall within the limits of Federal Rule of Evidence 701. (*Id.*)

In paragraph 5 of his first declaration, Mr. Wood states the reference in the LOI amendment to the Services Agreement between the parties, dated May 1, 2017, is to the Services Agreement dated November 2007. (ECF No. 20 ¶ 5.) According to Mr. Wood, the May 1, 2017 date is an error. (*Id.*) The Court addressed Mr. Wood's personal knowledge of the LOI amendment immediately above. Plaintiff fails to explain its hearsay objection. There does not appear to be any statement by an out-of-court declarant. In addition, Plaintiff characterizes Mr. Wood's statements as "legal conclusions" while citing Federal Rule of Evidence 701 on opinion testimony. It is not clear whether Plaintiff is urging the Court to disregard Mr. Wood's statements as conclusory or whether Plaintiff is asserting Mr. Wood's statements are barred by Federal Rule of Evidence 701. Regardless, the Court overrules both objections. Mr. Wood's statement he believes the May 1, 2017 date on the LOI amendment to be an error is not conclusory because he provides specific facts as to how he has reached that belief. Mr. Wood states the date appears to be an error because he knows of only one "Services Agreement" between the parties, and, as a participant in contract negotiations between the parties, he has understood the LOI amendment to refer to the November 2007 Services Agreement. (ECF No. 20 ¶¶ 2, 5.) Mr. Wood does not purport to base his statement on specialized knowledge. Rather, the statements in his declaration are based on his experience as a participant in interactions between the parties. (*Id.* at ¶ 2.) The Court overrules Plaintiff's objections.

### b. Paragraph 9

Plaintiff objects to paragraph 9 of Mr. Wood's first declaration on lack of personal knowledge and hearsay grounds. (ECF No. 28-2 at 7.) In response, Defendant argues Mr. Wood has personal knowledge based on his job and Plaintiff has failed to identify what about Mr. Wood's declaration is hearsay. (ECF No. 39 at 9.) In paragraph 9 of his declaration, Mr. Wood states in early 2019 the parties measured Plaintiff's performance at the Tracy warehouse against the "Key Performance Indicators" defined in the Services Agreement. (ECF No. 20 ¶ 9.) Plaintiff again fails to explain its hearsay objection, and the Court does not see how this paragraph can be read to contain a statement by an out-of-court declarant. Plaintiff's lack of personal knowledge objection is well-taken — in his first declaration Mr. Wood does not provide any evidence as to how he knows of the parties' performance in Tracy, only that he is familiar with the contract negotiations. (*See id.* at ¶¶ 2, 9.) However, Mr. Wood's supplemental declaration provides ample evidence of his familiarity with Plaintiff's performance in Tracy. (ECF No. 36 ¶¶ 4–6, 8.) Therefore, the Court overrules Plaintiff's objections.

### iv. Second Declaration of Christopher Wood[3]

### a. Paragraph 8

Plaintiff objects to paragraph 8 of Mr. Wood's supplemental declaration (ECF No. 36 ¶ 8) on lack of personal knowledge, relevance, and hearsay grounds. (ECF No. 42 at 3–4.) As stated immediately above, Mr. Wood's supplemental declaration contains sufficient evidence of his personal knowledge of the facts in paragraph 9, including in the paragraph itself. (*See* ECF No. 36 ¶¶ 4–6, 9.) As discussed more fully below, the parties' continued performance under the terms of the Services Agreement is clearly relevant to whether they created an implied-in-fact

---

[3] In addition to paragraphs 8 and 9, Plaintiff objects to paragraph 6 of Mr. Wood's supplemental declaration on lack of personal knowledge, improper opinion, and inadmissible hearsay grounds. (ECF No. 42 at 2.) Although Plaintiff fails to explain these objections, they seem relevant only to the latter half of paragraph 6. Mr. Wood's statements as to the cause of the deterioration in the business relationship between the parties is not relevant to the narrow question considered here. Accordingly, the Court relies only on the first two sentences of paragraph 6 and need not consider Plaintiff's objections.

7

agreement after June 30, 2018.  Plaintiff's hearsay objection is unexplained and seemingly frivolous — this portion of Mr. Wood's supplemental declaration does not contain a statement by an out-of-court declarant.  The Court overrules Plaintiff's objections.

### b. Paragraph 9

Finally, Plaintiff objects to paragraph 9 of Mr. Wood's supplemental declaration (ECF No. 36 ¶ 9) on lack of personal knowledge, conclusory, and best evidence rule grounds.  (ECF No. 42 at 4.)  Plaintiff is correct Mr. Wood's statement that Plaintiff's practice of invoicing for its services continued in substantially the same manner after June 30, 2018 is conclusory because Mr. Wood does not provide the Court with specific facts as to how he determined Plaintiff's invoicing practices remained unchanged.  However, paragraph 9 contains non-conclusory facts as well: (1) Mr. Wood, pursuant to his duties as Director of Warehouse Operations in 2018, reviewed invoices from Plaintiff; and (2) Plaintiff regularly sent invoices to Defendant prior to June 30, 2018.  (ECF No. 36 ¶ 9.)  The Court sustains Plaintiff's objection only as to Mr. Wood's statements regarding the similarity in Plaintiff's invoicing practices before and after June 30, 2018.

Plaintiff's additional objections, however, are meritless.  Mr. Wood's statement that he personally reviewed invoices from Plaintiff as a function of his job is sufficient evidence of personal knowledge.  Plaintiff's best evidence rule objection seems to be left over from its objections to Mr. Wood's first declaration.  There are no documents attached to Mr. Wood's supplemental declaration at which a Federal Rule of Evidence 1002 objection may be levied.  *See* Fed. R. Evid. 1002, notes of advisory committee on proposed rules (explaining the rule only applies to documentary evidence).  Accordingly, these objections are overruled.

## B. Existence and Scope of Arbitration Agreement

The Court now turns to the parties' arguments regarding the existence and scope of the arbitration agreement.  The parties disagree whether the arbitration provision in the Services Agreement was binding at the time of the present dispute and whether it applied to the parties' conduct in Tracy.  (ECF No. 32 at 12–13, 15–19; ECF No. 28 at 13–23.)  In addition, the parties disagree whether the scope of the arbitration provision is broad enough to encompass this action.

(ECF No. 32 at 13; ECF No. 28 at 24).

          *i.*     *Existence*

First, the parties dispute whether the LOI amendment extended the term of the Services Agreement to June 30, 2018 and applied the Services Agreement to the parties' dealings in Tracy. Defendant argues the terms of the Services Agreement were incorporated into the LOI through its subsequent amendment. (ECF No. 32 at 12–13.) In opposition, Plaintiff asserts the terms of the amendment to the LOI extending the Services Agreement and applying that agreement to the parties' operations in Tracy should be disregarded because "[t]he LOI and its First Amendment are separate agreements from the Services Agreement and govern different aspects of [the parties'] business relationship." (ECF No. 28 at 17.) In reply, Defendant points to the express terms of the LOI amendment, arguing they clearly extend both the term and scope of the Services Agreement to apply to warehousing services provided by Plaintiff to Defendant through June 30, 2018. (ECF No. 35 at 3–4.)

The language of the amendment to the LOI is open only to one reasonable interpretation. Section 2 of the LOI amendment expressly extends the terms of the Services Agreement through June 30, 2018 and applies those terms to the parties' relationship at the Tracy facility. (ECF No. 26 at 26.) The amendment states, "the Services Agreement . . . shall be deemed extended, with effect between the Parties, through the LOI Term . . . . The Agreement shall apply to any services performed by [Plaintiff] at the Tracy Warehouse . . . ." (*Id.*)[4] Plaintiff fails to convince the Court the clear language of the LOI amendment should be disregarded. To the extent Plaintiff attempts to argue this language means something other than what it says, Plaintiff provides no reasonable alternative interpretation for the Court to consider. Furthermore, the declaration of Plaintiff's employee, Charles Michael Hopkins, directly contradicts Plaintiff's argument here. (*See* ECF No. 28-1 ¶ 11 ("In the First Amendment to the LOI, [the parties] agreed . . . to extend the termination date . . . of the Services Agreement to June 30, 2018.").

---

[4] The LOI amendment identifies the Services Agreement as the document signed May 1, 2017. (ECF No. 26 at 26.) Defendant presented uncontroverted evidence this date was a typographical error. (ECF No. 20 ¶ 5.)

9

Next, Defendant argues that despite the expiration of the Services Agreement on June 30, 2018, the parties created an implied-in-fact contract through continued performance under the Services Agreement. (ECF No. 32 at 17.) Plaintiff responds by arguing the parties' continued performance did not create an implied contract for three reasons. First, in a footnote, Plaintiff argues an implied contract cannot be created when there is an existing express contract for the same subject matter. (ECF No. 28 at 19 n.5 (citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1000 (N.D. Cal. 2014); *Lance Camper Mfg. Corp. v. Republic Indem. Co.* (*Lance Camper*), 44 Cal. App. 4th 194, 203 (1996)).) Second, Plaintiff argues the termination provisions in the Services Agreement and LOI precluded any implied-in-fact extension of the Services Agreement based on the parties' continued performance. (*Id.* at 20 (citing *Citizens for Amending Proposition L v. City of Pomona*, 28 Cal. App. 5th 1159, 1189–90 (2018)).) Finally, Plaintiff argues no contract incorporating terms of the earlier agreements can be implied from the parties' conduct after June 30, 2018 because the parties did not engage in the same course of conduct as under the prior agreement. (*Id.* at 21 (citing *Indus. Advanced Techs., Inc. v. Matthews Studio Equip., Inc.*, No. CV 17-4962-GW(RAOx), 2018 WL 6131228, at *18 (C.D. Cal. July 30, 2018)).) Plaintiff's third argument is essentially that Defendant has failed to present sufficient evidence of continued performance under the Services Agreement after its expiration. The Court will first address this argument and Defendant's evidence, and then it will turn to a consideration of Plaintiff's remaining points.

Under California law,[5] an implied-in-fact contract requires the same elements as an express contract but is "manifested by conduct" rather than words. *See* Cal. Civ. Code § 1621. Thus, "[a]n implied contract . . . must be founded upon an ascertained agreement of the parties to

---

[5] The parties do not discuss what jurisdiction's contract law the Court should look to in determining whether the parties created an implied-in-fact contract. However, both cite California cases in their arguments over whether such a contract existed. (*See* ECF No. 32 at 17 (citing *British Motor Car Distribs., Ltd. v. New Motor Vehicle Bd.*, 194 Cal. App. 3d 81, 91 (1987)); ECF No. 28 at 21 (citing *Citizens*, 28 Cal. App. 5th at 1189–90).) The parties also cite federal cases applying California contract law. (*See* ECF No. 32 at 17 (citing *U.S. ex rel. Oliver*, 195 F.3d 457); ECF No. 28 at 19 n.5 (citing *O'Connor*, 58 F. Supp. 3d at 1000).) The Court will do the same.

10

perform it, the substantial difference between [express and implied contracts] being the mere mode of proof." *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2012).  When parties continue to perform after an agreement has expired, "an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 915 (1978) (quoting *Martin v. Campanaro*, 156 F.2d 127, 129 (2nd Cir. 1946)); *see also U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (holding the same principle applies under California law); *Indus. Advanced*, 2018 WL 6131228, at *18 (same).  The terms of the new contract may include an agreement to arbitrate present in the old. *Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) (quoting *Ajida Techs., Inc. v. Roos Instruments, Inc.*, 87 Cal. App. 4th 534, 545–46 (2001)) (citing 2 Williston on Contracts § 6:42 (4th ed. 2004)).

Here, both parties have submitted evidence of continued performance under the terms of the Services Agreement after June 30, 2018.  After the Services Agreement and LOI expired, Plaintiff continued to provide the same warehousing services to Defendant at the Tracy warehouse as specified under the LOI.  (*Compare* ECF No. 28-1 ¶ 16 *with* ECF No. 26 at 26–27.) The parties measured Plaintiff's performance providing these services against the "Key Performance Indicators" contained in the Services Agreement in the latter half of 2018 and early 2019.  (ECF No. 20 ¶ 9; ECF No. 36 ¶¶ 6, 8.)  Plaintiff invoiced Defendant for Plaintiff's services before and after the expiration of the written agreements between the parties.  (ECF No. 36 ¶ 9; ECF No. 14-3 ¶ 10; ECF No. 14-5.)  This evidence of continued performance under the Services Agreement as modified by the LOI amendment demonstrates the parties manifested an agreement to continue the terms of the express agreements beyond June 30, 2018.  *See British Motor Car Distribs., Ltd.*, 194 Cal. App. 3d at 91 (evidence one party provided notice of termination pursuant to the termination provision of the expired express contract was sufficient to show implied-in-fact extension of express agreement).

The only evidence presented by Plaintiff rebutting the evidence of performance after June 30, 2018 is paragraph 15 of Mr. Hopkins's declaration.  Mr. Hopkins's declaration states in relevant part, "[between July 1, 2018 and May 17, 2019, the parties] . . . agreed to a business

1  arrangement whereby [Defendant] would reimburse [Plaintiff] for the unpaid balance of costs and
2  expenses [Plaintiff] incurred in providing its services to [Defendant] at the Tracy [w]arehouse."
3  (ECF No. 28-1 ¶ 15.)  If taken as true, this statement suggests the parties altered their relationship
4  after June 30, 2018 by changing the agreed-upon pricing.  (*See* ECF No. 37 ¶ 8.)  However,
5  because Mr. Hopkins's statement is internally inconsistent, conclusory, unsupported, and offered
6  without evidence of personal knowledge, it is insufficient to create a genuine dispute of material
7  fact.

8        The statement is internally inconsistent because it is partially contradicted by the prior two
9  paragraphs, which state in relevant part, "[a]fter the negotiations failed, [Defendant] terminated
10 [Plaintiff's] services at the Tracy [w]arehouse . . . and transition[ed] [Plaintiff's] services there to
11 [Defendant]" (*id.* at ¶ 13), and "the negotiations for the fourth amendment [to the Services
12 Agreement], the LOI and First Amendment, as well as the Services Agreement, terminated on
13 June 30, 2018" (*id.* at ¶ 14).  It cannot both be true that the parties terminated their relationship
14 (*id.* at ¶¶ 13–14), but then continued their relationship on different terms (*id.* at ¶ 15).  Thus, Mr.
15 Hopkins contradicts himself and the Court cannot determine which of the two statements are to be
16 taken as true.

17       The statement is unsupported because Plaintiff offers no other evidence from which an
18 inference that the parties changed their business arrangement may be drawn.  The only
19 documentary evidence Plaintiff submits are the three amendments to the Services Agreement and
20 Defendant's request for proposal to run the warehouse operation in Tracy, none of which have
21 anything to say about the parties' conduct after June 30, 2018.  (ECF Nos. 44, 45.)  In paragraph
22 16 of his declaration, Mr. Hopkins details the services Plaintiff provided to Defendant at the
23 Tracy facility after June 30, 2018.  (ECF No. 28-1 ¶ 16.)  However, these services are lifted
24 verbatim from the amendment to the LOI, which, as noted above, modified the Services
25 Agreement by postponing its termination date and expanding its scope to apply to the parties'
26 dealings in Tracy.  (*Compare id. with* ECF No. 26 at 26–27.)  Thus, rather than providing
27 evidence of materially different performance after June 30, 2018, Mr. Hopkins's declaration,
28 aside from the single statement quoted above, provides evidence Plaintiff continued to perform

1   the same contractually obligated services after the expiration of the Services Agreement.

2         The statement is conclusory because it does not provide specific facts detailing how the
3   parties agreed. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (finding no genuine
4   issue of when an IRS form was sent when the supporting declaration only contained a conclusory
5   statement that the form was never received). Mr. Hopkins's assertion that the parties entered into
6   an agreement with a different term from the contract codified in the Services Agreement, without
7   providing any factual support as to how, when, or between which employees the agreement was
8   made, is a conclusion insufficient to create a genuine dispute. *Cf. Robb v. Conn. Bd. of*
9   *Veterinary Med.*, 157 F. Supp. 3d 130, 143 (D. Conn. 2016) ("[P]laintiff may not simply allege
10  that 'the parties agreed.' . . . [A]ny conclusory allegation of an 'agreement' is not to be accepted
11  as true; the plaintiff must allege *facts* affirmatively demonstrating such an agreement.") (emphasis
12  in original). Because Plaintiff provides no further evidence to corroborate Mr. Hopkins's
13  conclusory statements, his declaration is insufficient to create a genuine issue of material fact.
14  *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1104 (S.D.
15  Cal. 2018) ("[D]eclarations that contain only conclusory statements, instead of specific facts, are
16  insufficient unless accompanied by other evidence to corroborate the statements.").

17        Finally, Mr. Hopkins's declaration contains no facts as to how he knows the parties
18  entered into a new agreement after June 30, 2018. In paragraph 1, Mr. Hopkins identifies himself
19  as Plaintiff's "Divisional Commercial Officer." (ECF No. 28-1 ¶ 1.) Mr. Hopkins states he has
20  served in this role since January 27, 2019, and, as a function of being in that role, he is "familiar
21  with the transactions between [Plaintiff] and [Defendant]. (*Id.*) However, the relevant period
22  begins July 1, 2018, nearly seven months before Mr. Hopkins began his role as "Divisional
23  Commercial Officer" and before he acquired the knowledge of the parties' transactions pursuant
24  to that role. Mr. Hopkins may have become acquainted with the prior dealings of the parties after
25  he assumed his current role or served in a role that allowed him to observe the parties' business
26  relationship during the relevant period. Without evidence of such, however, the Court declines to
27  draw these inferences out of thin air. *See Richards*, 602 F. Supp. at 1244–45. Furthermore, as
28  discussed above, Mr. Hopkins fails to provide the Court with any facts showing how, when, or

between which employees the agreement was made.  In sum, Mr. Hopkins has failed to provide evidence he had "an opportunity to observe, and . . . actually observed" the facts to which he swears in his declaration.

For the foregoing reasons, Mr. Hopkins's declaration as to this issue is both insufficient to create a genuine dispute of material fact and inadmissible as lacking evidence of personal knowledge.  As such, the Court may disregard it.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5 (9th Cir. 2002) (uncorroborated affidavit and deposition testimony without evidence of personal knowledge insufficient to create genuine dispute); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Hansen*, 7 F.3d at 138 ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data . . .").  Therefore, the evidence of continued performance under the terms of the written contract is sufficient to create a presumption the parties operated under an implied-in-fact contract containing the same terms as the Services Agreement and LOI.

Plaintiff presents no facts demonstrating an intent to deviate from the terms of the Services Agreement and LOI amendment generally or the arbitration provision specifically which may overcome the presumption created by the parties' continued performance after June 30, 2018.  *See Thelen Reid Brown Raysman & Steiner LLP v. Marland*, 319 F. App'x 676, 678–79 (9th Cir. 2009) (quoting *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977)) (arbitration provisions cannot survive expiration of an agreement where there is evidence of intent to forego arbitration).  The portion of Mr. Hopkins's declaration that states the parties agreed the Services Agreement would not govern the operations at the Tracy warehouse is inadequate to create a genuine dispute for the same reasons paragraph 15 of his declaration fails to do so.  (ECF No. 28-1 ¶ 9.)  Specifically, the statement is inconsistent with the subsequent paragraphs, which acknowledge the parties modified the Services Agreement to cover a portion of their conduct in Tracy by extending its term through the creation of the LOI amendment.  (*Compare id. with id.* at ¶¶ 10–11.)  The statement is conclusory

because it merely concludes the parties agreed without demonstrating such agreement through specific facts. The statement is uncorroborated because Plaintiff submits no other evidence of intent to forego the terms of the expired express agreements. Finally, Plaintiff provides no evidence of Mr. Hopkins's personal knowledge of the parties' agreement to abandon the Services Agreement. Therefore, the presumption of an implied-in-fact contract stands uncontested.

Plaintiff's legal arguments are similarly unavailing. Plaintiff cites *O'Connor* and *Lance Camper* for the proposition that an implied-in-fact contract cannot exist when there is an express contract between the parties. (ECF No. 28 at 19 n.5.) Both cases are easily distinguishable. *O'Connor* and *Lance Camper* both rejected the argument that the parties had created two contradictory and co-existing contracts, one of which was express and the other implied. *See O'Connor*, 58 F. Supp. 3d at 1001; *Lance Camper*, 44 Cal. App. 4th at 203. Here, the express contract by its terms expired — thus ceasing to exist — and the parties' performance along the same terms created an implied-in-fact contract. Whether the implied contract is characterized as a renewal of the express agreement or a new contract with identical terms is irrelevant to the question here. The point is that only one contract existed at any one time. Therefore, there is no contradiction between existing contracts, and *O'Connor* and *Lance Camper* are inapposite.

Next, Plaintiff cites *Citizens for Amending Proposition L* for the proposition that a contract with a termination date cannot be extended or modified after its termination. (ECF No. 28 at 20.) However, after reasoning that the express contract between the parties could not have been extended after its termination date, the *Citizens* court considered whether an implied-in-fact contract had been formed after the expiration of the express agreement. *Citizens*, 28 Cal. App. 5th at 1189. In other words, the *Citizens* court analyzed whether the express contract had been extended after its termination and whether the parties had created an implied-in-fact contract through their performance after the termination of the express agreement as two separate questions. *Id.* Although the court ultimately found an implied contract had not been formed, the court's acknowledgement one could have been formed under the right circumstances, despite the expiration of the express agreement, directly cuts against Plaintiff's argument. *See id.*

///

Plaintiff has failed to submit evidence of facts that create a genuine dispute as to whether the parties created an implied-in-fact contract containing the same terms of the Services Agreement after the expiration of the parties' express agreements. Accordingly, the Court finds an implied-in-fact contract existed among the parties, the terms of which included the arbitration provision from the Services Agreement. Therefore, Defendant has met its initial burden to demonstrate the existence of an arbitration agreement between the parties.

> ii. Scope

Once the moving party has shown the existence of a valid agreement to arbitrate, the party resisting arbitration bears the burden of proving the dispute does not fall within the scope of the arbitration provision. *Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91. Arbitration provisions are construed broadly, and any doubts are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. "[T]o require arbitration [an aggrieved party's] factual allegations need only touch matters covered by the contract containing the arbitration clause . . . ." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (internal quotation marks omitted).

Defendant argues the arbitration provision encompasses Plaintiff's claims because the existence of the contractual agreement between the parties bars Plaintiff's quasi-contract claims. (ECF No. 32 at 14.) Therefore, Defendant contends, Plaintiff's claims implicate the "existence, interpretation or application" of the Services Agreement and the parties' respective obligations to perform under it. (*Id.* at 14–15.) In opposition, Plaintiff argues the parties did not perform under the Services Agreement after June 30, 2018, and therefore the arbitration provision contained in the Services Agreement does not encompass this lawsuit. (ECF No. 28 at 23–25.) Defendant responds by characterizing Plaintiff's arguments as "conclusory." (ECF No. 35 at 10–11.)

The arbitration provision in the Services Agreement provides that "any disagreement concerning the existence, interpretation or application of this Agreement" shall be submitted for binding resolution to JAMS in San Francisco. (ECF No. 25 at 15.) As the Court has already determined, the parties performed in the latter half of 2018 pursuant to an implied-in-fact contract containing the same terms as the Services Agreement, as modified by the LOI amendment. The language of the arbitration provision is broad, covering not only the parties' obligations under the

contract but also disputes over the contract's existence.  (ECF No. 25 at 15.)  Resolution of Plaintiff's quasi-contractual claims requires determining whether an enforceable contract covering the same services existed between the parties.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  If so, whether Plaintiff is entitled to payment for the services it alleges it rendered hinges on whether Plaintiff performed its contractual obligations in a manner consistent with the agreement's terms.  *See Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012).  Either question involves inquiries "concerning the existence, interpretation or application" of the implied-in-fact contract.  Therefore, this dispute falls within the scope of the arbitration provision in the Services Agreement.

    C. Dismissal

As Plaintiff's claims are subject to arbitration, the Court has discretion to stay the action pending arbitration or dismiss it.  *Thinket Ink Info. Res., Inc.*, 368 F.3d at 1060 (quoting *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978)).  Defendant requests the Court dismiss Plaintiff's FAC as barred by the arbitration agreement between the parties.  (ECF No. 32 at 19–20.)  Plaintiff, rather than providing the Court a reason it should not dismiss Plaintiff's FAC, challenges the Court's authority to do so.  (ECF No. 28 at 25.)  Instead, Plaintiff requests the Court stay the action pending arbitration.  (*Id.*)  As the Court has already found Plaintiff's claims arise from the parties' obligations under the implied contract created by continued performance under the Services Agreement and subsequent amendments, the Court sees no reason to retain jurisdiction over this matter.  Therefore, Plaintiff's FAC is DISMISSED.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration (ECF No. 18) and DISMISSES Plaintiff's First Amended Complaint (ECF No. 13).  As such, Plaintiff's Application for Right to Attach Order and Motion for Issuance of Writ of Attachment is DISMISSED as moot.  (ECF No. 14.)

//

//

IT IS SO ORDERED.

Dated: November 1, 2021

_____
Troy L. Nunley
United States District Judge